## ANDREWS *v.* BROWN.

Open accounts of sums of money due on contract, are not assignable by delivery, without writing, under section 952 of the Code, so as to vest in the transferee a right of action in his own name.

The true meaning of the word assigned, when applied to the transfer of a written instrument, implies a written assignment, unless it is controlled by some adjunct, such as *by delivery*, or the like.

*Appeal from the Johnson District Court.*

BROWN commenced suit against Andrews, before a justice

Andrews v. Brown.

of the peace, on a note for $192, dated January 25, 1853, payable to the order of C. C. Brown, thirty days after date, "for pork purchased of him this day," and signed by Andrews. The assignment on the note shows, that it was transferred to the plaintiff (E. A. Brown) after due. The amount claimed in the original notice was $80. On the 20th of July, 1853, the parties appeared before the justice. Andrews filed an answer, denying that he owed the plaintiff the sum claimed, or any other sum whatever, and alleging that the note was assigned to the plaintiff after due; that at the time of said assignment of said note, by the payee thereof, the said C. C. Brown, the payee, was indebted to the defendant in the sum of $75, on an account for goods sold and delivered to the said C. C. Brown, at his request, by the firm of G. Andrews & Co., which said account was transferred to this defendant before the assignment of said note, and also in the further sum of $1.40, for goods sold and delivered to said C. C. Brown, by the defendant, at his request. Copies of said accounts are attached to, and made a part of, the answer, and the same are pleaded as a set-off. To this answer the plaintiff demurred, assigning, among other causes, the following: 1. No copy of the assignment of said account is set out in the answer; 2. It is not averred in said answer that E. A. Brown, the assignee of said note, ever had notice of the assignment of said account, or of the account of G. Andrews. The justice sustained the demurrer to the answer, and the defendant refusing to amend or answer over, judgment was rendered against him. The defendant then sued out a writ of error from the District Court, alleging in his affidavit, that the justice erred in sustaining the demurrer to his answer. In the District Court, the judgment of the justice was affirmed, from which decision the defendant appeals to this court, and assigns as error the affirmance by the District Court, of the judgment of the justice.

*W. Penn. Clarke*, for appellant.

*James D. Templin*, for appellee.

ISBELL, J. (WOODWARD, J. dissenting).—We think we are justified in saying, that the only substantial question involved in the record of this case is, whether open accounts of sums of money due on contract, are assignable by delivery without writing, so as to vest in the transferee a right of action in his own name, by virtue of section 952 of the Code.

We hold that they are not; that a written assignment is there contemplated; that the true use of the word assigned, when applied to the transfer of a written instrument, implies a written assignment, unless it is controlled by some adjunct, such as *by delivery*, or the like. We think that this can but be apparent to any one who will take the trouble to trace it back to the signet, the impression of which was formerly used to evidence solemn transfers, for which a written signature, as the ability to write has become more universal, has been substituted. And we think this, also, accords with the general understanding of the word thus used.

Again: the legislature, in the same chapter, has provided for the transfer of demands by "indorsement thereon, or by other writing." While still on the subject of transfering demands, occurs the language to which we are attempting to give a construction, to wit: "an open account of sums of money due on contract, may be assigned." The question now arises, how? The answer, from the context, obtrudes, to wit: in the manner above contemplated. If any other manner had been intended, it should have been expressed.

Open accounts have been made assignable so as to vest in the assignee a right of action in his own name, with reluctance. This is the latest innovation on the common law rule, that choses in action are not generally assignable. This circumstance is, to our minds, an argument, that the legislature did not intend to make such accounts assignable by less solemnity of transfer, than other demands which have been more willingly made assignable. The ability to write is now so universal—the acknowledged superiority of written over mere oral evidence is such—the true meaning of the word assigned—the general understanding of its import

Andrews v. Brown.

—the manner in which it is here used in relation to the con-
text—the peculiar character of this species of demand—the
frauds which might be perpetrated, and the inconvenience
that would arise—all combine to forbid us from making such
accounts transferable by delivery, so as to vest in the trans-
feree a right of action in his own name, by what we can but
regard as a forced construction put upon the word assigned.

It will be observed, that we pay but little attention to the
argument urged, that an equitable transfer of accounts, by
mere delivery, has been generally recognized, which has
been denominated (how correctly we shall not now stop to
inquire), an assignment. We draw a distinction between the
equitable right created by the transfer of such demands, as
heretofore recognized, and the rights created by our statute.

                                  Judgment affirmed.

Woodward, J. (dissenting).—The principal question in
this cause, is on the assignment of the account. And on
this question, I am obliged to differ from the majority of the
court. It seems to me very clear, that the statute intended
to have this species of *chose in action*, assignable by parol.

I take this view of chapter fifty-eight of the Code, relat-
ing to notes and bills. Our former statutes had rendered
very many instruments negotiable, which had never been
so before, and had brought into confusion and uncertainty
the important interests of indorsers and indorsees, the sub-
jects of notice and set-offs, and many of the before well un-
derstood defences. This chapter intended to restore nego-
tiable paper, proper, to its former and proper position, whilst
at the same time, it aimed, in conformity with our own for-
mer statutes, to facilitate the transfer of all kinds of promises
and claims which could be the subject of transfer. In doing
this, it distinguished between the negotiable and the assign-
able. Under our former system, nearly every promise and
obligation, was, either at common law or by statute, assign-
able, even if it was not negotiable. Thus a promissory
note, not negotiable, or a note payable in property or labor,
was assignable, either by writing or by parol; and such a

note, payable to A., might be sued in his name, "for the use of B.," and the possession was held sufficient, *prima facie* evidence of B.'s right to sue thus. A written assignment was not required. Now, the only substantial change which the Code seems to have made, is to authorize B. to sue in his own name, and to preserve and define the rights of the maker of instruments not negotiable, in relation to defence and set-off. A qualification of the above remarks, exists in the provision of section 950, which *allows* parties to make instruments negotiable, which are not so by the general contemplation of law.

Section 952 permits the assignee of an account to sue in his own name, but subject to any defence which the debtor may have against the creditor, at any time before suit commenced thereon. This does not change the *substantial* rights of the parties from what they were before, unless it be in extending the right of defence. Before the Code took effect, Andrews & Co. could sue *for the use of* G. Andrews, now G. Andrews can sue in his own name alone, and this does not require any assignment in writing. The terms "assign" and "assignment," do not imply a writing. *Creighton* v. *Gordon*, Morris, 41.

The books use the qualifying expression, "cannot be assigned, *so as to enable the assignee to sue in his own name.*" Assignment means transfer. That a chose in action may be assigned by parol or delivery, without writing, see *Briggs* v. *Dorr*, 19 Johns. 95; *Ford* v. *Stuart*, 19 Ib. 342; *Prescott* v. *Hull*, 17 Ib. 284; *Onion* v. *Paul*, 1 Harr. & Johns. 114; and see the following, which I have not been able to examine: *Clarke* v. *Rogers*, 2 Greenleaf, 147; 2 Ib. 322; *Robbins* v. *Bacon*, 3 Ib. 349; *Witcomb* v. *Thomas*, 5 Ib. 282; *Spafford* v. *Page*, 15 Vermont, 49; *Cook* v. *Shute*, Cooke's, 67.

Then, as demands not negotiable, could before the statute be assigned by parol, I understand the statute to use the word "assign" in that sense, *unless it qualifies it.* It has thus qualified it in section 949, in relation to instruments in writing. If the word *implies* a writing, why has the statute added the words, "by indorsement thereon, or by other

writing." In the case of these " instruments," the paper it-self contains the provision under the party's hand, and they are susceptible of this more certain mode of assignment. But in the case of accounts, there is no paper writing con-taining the party's promise, and, therefore, the statute has used the words " may be assigned," in the unqualified sense. If section 592 had intended that accounts should be assign-able by writing only, it would have so said, as it has of *in-struments* in section 949.

Some considerations of a practical bearing might be added, but they are not necessary.