THE FIRST NATIONAL BANK OF CANTON v. THE DUBUQUE
SOUTHWESTERN RAILWAY CO.

1. **Draft:** ASSIGNMENT OF FUND: INTENTION.   A bill of exchange drawn
   upon a general fund, and not accepted by the drawee, does not operate as
   an assignment of the fund, but is merely evidence to be considered with
   other circumstances in determining the intention of the parties.

2. ——: ——: EVIDENCE CONSIDERED.   Evidence considered and held
   insufficient to show that a draft was intended as an assignment to the
   holder of a fund subsequently coming into the hands of the drawee.

*Appeal from Linn District Court.*

TUESDAY, DECEMBER 2.

THE plaintiff filed a petition in equity alleging that R. G.
Brock & Co., a partnership, furnished to the Dubuque South-
western Railway Company twenty-six car loads of coal, on
account of which said railway company became indebted to
said Brock & Co. in the sum of $1200, and was so indebted
on the 21st day of February, 1877; that the said Brock & Co.,
being desirous of transferring and assigning said claim of
$1200 to the plaintiff, did, for value, assign and transfer the
same in writing to the plaintiff in words and figures follow-
ing, to-wit:

"$1200.                  CANTON, ILLINOIS, Feb. 21st, 1877.

" March 5th, after date, pay to the order of D. Williams &
Son twelve hundred dollars, value received, and charge the
same to account of, with exchange,

R. G. BROCK & Co.

To Dubuque Southwestern R. R. Co., Dubuque, Iowa."

That on the 5th and also on the 22nd day of March, 1877·
plaintiff notified defendant that it was the owner of said ac
count and draft.   That said account is still the property of
plaintiff, long past due and no part thereof has been paid ex
cept the sum of $786.70, paid March 15th, 1877, and tha
there is now due and owing plaintiff thereon the sum of
$413.30, with interest.   To this petition is attached a copy of

the account in favor of Brock & Co. against the defendant, amounting to $1200. The answer of the defendant admits the sale by Brock & Co. to defendant of the coal as alleged in the petition, and admits that defendant thereby became indebted to Brock & Co. for the sum of $1200 or thereabout. The defendant denies that Brock & Co. ever assigned their account against the defendant to the plaintiff, and denies that the plaintiff is the owner of the account; denies all indebtedness on the account, and avers that defendant has fully paid the same. Upon motion of plaintiff it was ordered that the cause be tried upon written evidence. The court rendered judgment in favor of plaintiff for the sum of $437.30. The defendant appeals.

*Hubbard, Clark & Deacon*, for appellant.

*Blake & Hormel*, for appellee.

DAY, J. The evidence establishes the existence of the following facts: In January, February and March, 1877, R. G.

1. DRAFT: assignment of fund: intention.

Brock & Co. delivered to the defendant twenty-six car loads of coal, of the value of $1200. Of these, fourteen cars, of the value of $653.96, were delivered prior to the 21st of February, and twelve car loads, of the value of $546.24, were delivered subsequently to 21st of February, 1877. Under the arrangement between the parties, coal delivered during any month was to be paid for on the 15th of the following month. On the 21st day of February, 1877, A. L. Williams, a member of the firm of Brock & Co., drew on the defendant the draft set out in the statement preceding this opinion. D. Williams & Son indorsed this draft in blank, and it was by Brock & Co. delivered to the plaintiff, Brock & Co. receiving therefor their own matured acceptance for $1000, and the balance in cash, less the discount. D. Williams & Son made an assignment for the benefit of creditors on the 2nd day of March, 1877. On the 15th day of March, 1877, the defendant paid to A. L. Williams, member of firm of Brock & Co., $786.70, which he paid to the plaintiffs. On the 13th day of March, 1877, Brock & Co. made an assign-

ment for the benefit of their creditors. The claim in controversy against defendant was not inventoried in said assignment as a part of their assets. On the 16th day of March, 1877, A. L. Williams made a schedule of nine cars unpaid for, amounting to $412.81, and assigned the amount due thereon to the plaintiff, in the name of R. G. Brock & Co. The defendant never accepted the draft, and refused to pay the plaintiff the balance due on the coal. On the 22nd of March, 1877, the plaintiff gave defendant written notice of the execution of said draft, and that plaintiff claimed of defendant the balance due on the coal. Brock & Co., through R. G. Brock, compromised with their creditors, and thereupon R. G. Brock, in the name of Brock & Co., assigned the claim for the nine cars of coal in question to Hubbard Clark & Deacon, to whom the defendant has made payment. The plaintiff, in the petition, does not allege the making of any assignment of the amount in question, other than the drawing of the draft above referred to.

The plaintiff relies upon *McWilliams v. Webb & Son*, 32 Iowa, 577. That case is essentially different in its facts from the present. In that case a simple order was drawn directly in favor of the party to whom it was held the assignment was made, and the amount of the fund was in the hands of the drawee. In this case an instrument possessing all the requisites of a bill of exchange was drawn, payable twelve days after date, with exchange, in favor of third parties, and by them indorsed in blank. The evidence shows that at the date of the drawing of this bill the defendant was not indebted to Brock & Co. in any portion of the amount now claimed, and whether or not it would become so indebted depended upon the contingency of the delivery of coal by Brock & Co. to the defendant.

The peculiar circumstances in *McWilliams v. Webb & Son* justify the decision there made. In that case it is said: "The court was fully justified in finding, from all the facts and circumstances of the transaction, as disclosed in the evidence, that it was the intention of Stoddard to transfer to Webb & Son his claim on the insurance company. The evidence shows

that Webb & Son received the claim of Stoddard against the insurance company *in payment* ·of his indebtedness to Webb & Son, and that the latter accepted it in ·satisfaction of their claim, thus clearly indicating the intention to assign the debt for which the order was drawn." In the case at bar the plaintiff required the indorsement of Williams & Son, thus reserving a right of action against them, and as· clearly indicating an intention not to accept the claim against the defendant in satisfaction of the sum due plaintiff. The question now is, whether the drawing of this bill of exchange, in the manner and under the circumstances appearing in this case, operated as an equitable assignment to the plaintiff of the sum which was afterward in the hands of the defendant, due Brock & Co. As has been said, the instrument drawn in this case has upon its face all the requisites of a negotiable bill of exchange. It is drawn upon a general and not upon a particular fund.

In *Bank of Commerce v. Bogy*, 44 Mo., 1 (17), it is said: "A bill drawn upon a debtor does not, of itself, operate as an assignment in equity of the debt, even if it is negotiated for a good consideration. It is evidence tending to show such assignment; and, with other circumstances to show that such was the intention of the drawer, will vest in the holder an exclusive claim to the indebtedness." In *Mandeville v. Welch*, 5 Wheat., 286, the following language is employed: " It is said that a bill of exchange is, in theory, an ˙assignment to the payee of a debt due from the drawee to the drawer. This is undoubtedly true, when the bill has been accepted, whether it be drawn on general funds or a specific fund, and whether the bill be in its own nature negotiable or not; for in such a case the acceptor, by his assent, binds and appropriates the funds for the use of the payee. * * * In cases, also, where an order is drawn for the whole of a particular fund, it amounts to an equitable assignment of that fund, and after notice to the drawee it binds the fund in his hands." In *Robbins v. Bacon*, 3 Maine, 315, it appeared that a book debt was due from Robbins to Bacon, and that Robbins drew out a bill of the particular items, and at the bottom of the account wrote an assignment to Stockbridge of the amount of the account. It

was held that this amounted to an assignment.  In *Walker v. Monro*, 18 Mo., 564, it was held that an order drawn for the whole of a debt is an equitable assignment of it, and the party in whose favor the order is drawn may sue for the debt in his own name.  In *Cowperthwaite v. Sheffield*, 1 Sand., Superior Court, 416 (450), it was held that two negotiable bills of exchange, similar to the one in question in this case, did not operate as an equitable assignment of a fund in the hands of the drawee.  In that case the court say:  "The instruments here were ordinary bills of exchange.  They did not, on their face, purport to be drawn on any particular fund, nor did they import that their payment was to depend upon any particular contingency.  In *McMenomy v. Fener*, 3 Johns., 72, it was held that where an order is drawn for an entire fund, the fund being particularly stated in the order, it operates as an assignment of the fund.  *Peyton v. Hallett*, 1 Caine's Rep., 363. If these bills had been in the form of orders for the entire proceeds of the shipment of cotton, they might, after notice to the Kelleys, have operated as an assignment of such proceeds.  But then they would not have possessed all the characteristics of bills of exchange."  In *Wheeler v. Stone*, 4 Gill., 38 (47), it is said: "An insuperable objection to the view thus presented by the counsel for the appellees is, that a bill of exchange, although accepted, unless drawn on a particular fund, does not operate to invest the payee with the character of an assignee.  In the case of *Sheppard against The State, use of Weisel*, the Court of Appeals, at its last session, held that even an accepted bill, unless drawn on a particular fund, does not operate to invest the payees with the character of an assignee of the fund.  The case in 5 Hill, 416, is decisive upon this point.  In *Harrison v. Williamson*, 2 Edw. Rep., 430, it was determined that a bill of exchange has not the effect of an assignment of the money for which it is drawn, in the hands of the drawee, unless, perhaps, where it is drawn upon a particular fund, and then, indeed, by the law merchant, it loses its character as a bill of exchange."  In *Sands & Co. v. Matthews, Finley & Co.*, 27 Ala., 399, it was held that a bill of exchange, until accepted, does not operate as an assignment

of the funds in the hands of the drawee. See Edwards on Bills, page 172; Byles on Bills, pages 67, 96, and 191, and notes; 1 Parsons on Notes & Bills, 42, 43, 290, 291, 299 and 300, and authorities cited.

From the authorities above cited the following principles are deducible:

*First.* That a bill of exchange drawn upon a general or particular fund operates as an assignment to the payee of a debt due from the drawee to the drawer, when the bill has been accepted by the drawee.

*Second.* That a bill of exchange drawn upon a general fund, but not accepted by the drawee, does not operate as an assignment of the fund, but is mere evidence of an assignment; and, with other circumstances showing that such was the intention, will vest in the holder an exclusive claim to the fund, and bind it in the hands of the drawee after notice.

*Third.* That an order upon the whole of a particular fund, though not accepted, will operate as an equitable assignment of the fund, and bind it in the hands of the drawee, after notice; but that such order does not possess the property of negotiability.

It is clear from the foregoing considerations that the bill of exchange in question in this case does not constitute an assignment of the fund which afterward came into the hands of the defendant, belonging to the drawer of the bill, but that, at the most, it is but proof tending, but insufficient of itself, to show such assignment. As has before been said, the fact that the plaintiff required the indorsement of Williams & Son negatives the idea that it received the bill as an assignment of the fund in the hands of the defendant in satisfaction of the debt due the plaintiff. The only circumstance which tends to show that Brock & Co. intended the bill as an assignment of this fund is the fact that they omitted to include this claim in the inventory of their assets when they made an assignment for the benefit of creditors. But this circumstance is susceptible of explanation upon other grounds, and we do not regard it as sufficient to evince an intention to assign this claim at the time the bill

was drawn. The assignment of the account by Williams on the 16th of March, 1877, cannot be regarded for two reasons: 1st. The property of Brock & Co. was then in the hands of an assignee for the benefit of creditors, and not under their control. 2d. The petition does not allege that any assignment was made other than by drawing the bill of exchange in question.

In our opinion, the plaintiff has failed to show an assignment to it of the claim in question. The judgment in favor of the plaintiff is erroneous.

REVERSED.