S. M. LEACH, Cashier, v. M. D. HILL, EXCHANGE BANK OF EARLHAM, and THOMAS EARLY, Appellants, and J. C. HILL and C. E. SISSON.

**Indorsement in Blank: RIGHTS UNDER.** Early told Sisson that S. should buy cattle for him and that he would provide funds for the payment of checks for cattle, drawn by Sisson in the latter's name. S. gave such a check to Hill, who endorsed it to plaintiff, in blank, with intent thereby to transfer all his rights growing out of his selling the cattle. *Held*, this endorsement gave plaintiff the right to sue Early on said agreement with Sisson, and an oral agreement to that effect is admissible in evidence.

ORAL ACCEPTANCE. An oral agreement by a banker to accept checks drawn upon him by a certain person is binding as to checks drawn within a reasonable time notwithstanding the drawer had no funds in the bank at the time of the promise or at the time the checks in question were drawn, where a third person who did have funds in the bank had agreed to provide funds to meet such checks.

FUTURE CHECKS: *Jury question.* Plaintiff testified that he telephoned defendant, inquiring whether thereafter checks drawn by S., a live stock buyer, would be paid, and the response was, "It will be all O. K. to cash checks from S. to the amount of stock he gets." Defendant testified that this response was an inquiry as to specific checks. *Held*, that the jury was warranted in finding that it referred to future checks.

SAME. Where checks are given for the purchase of stock by stock buyers, seventy days is not an unreasonable time for a promise to accept future checks to be binding.

**Parties: BANK AND CASHIER:** *Trustee of express trust.* Where a cashier, for his bank, cashes a check upon the undertaking of third persons that the check should be honored by the drawee, he may bring suit as cashier to recover on the check and said incidental agreement without joining his bank as a plaintiff. In such suit he acts as the trustee of an express trust and may, under Code of 1873, section 2544, sue without joinder of him for whose benefit the contract sued on was made.

*Appeal from Dallas District Court.*—HON. JOHN A. STORY, Judge.

FRIDAY, OCTOBER 7, 1898.

IN this case verdict and judgment were rendered against M. D. Hill, the Exchange Bank of Earlham, and Thomas Early for one hundred and nineteen dollars and five cents, in favor of the plaintiff, from which they appeal. The issues and facts appear in the opinion.—*Affirmed.*

*Cummins & Wright* and *D. W. Woodin* for appellants.

*White & Clark* for appellee.

GIVEN, J.—I. The following facts, as shown by the pleadings and proofs, are undisputed: On and for some time prior to January 27, 1893, S. M. Leach was cashier of the Adel Bank, of Adel, and M. D. Hill was proprietor and cashier of the Exchange Bank of Earlham, at Earlham, Iowa. Thomas Early was a man of ample means, residing at Earlham, and largely engaged in buying, shipping, and selling live stock. He transacted the principal part of his banking business in connection with the buying and selling of stock through said Exchange Bank of Earlham. C. E. Sisson, though possessed of no means, was engaged in buying live stock for shipment, and purchased stock from J. C. Hill to the amount of one hundred dollars, which stock Hill delivered for shipment, at the agreed place, on said twenty-seventh day of January, 1893. Sisson gave to Hill a check on the Exchange Bank of Earlham for the one hundred dollars, signed "C. E. Sisson." J. C. Hill indorsed said check in blank, and delivered the same to S. M. Leach, cashier, receiving therefor one hundred dollars of the money of the Adel Bank. S. M. Leach, as cashier, sent said check to the Exchange Bank of Earlham for payment, which was refused and the check protested, at a cost to plaintiff of two dollars and forty-eight cents. Sisson had no money in the Bank of Earlham to his credit at that time, but Early had credit largely above the amount of all outstanding checks given by Sisson for stock purchased. The plaintiff's petition is in two counts, in the first of which, in addition to the facts

above stated, it is alleged as follows: That it was verbally agreed between defendant Thomas Early and the said C. E. Sisson that the said C. E. Sisson should and would purchase live stock for and on account of the said Thomas Early, and that such stock, after its purchase by the said C. E. Sisson, as agent for the said Thomas Early, should be delivered to the said Thomas Early, and shipped either in the name of the said Thomas Early or of the defendant M. D. Hill; and that said stock should be paid for by checks drawn by the said C. E. Sisson upon the said Exchange Bank of Earlham or M. D. Hill, in favor of the person of whom said stock should be purchased; and that the said Thomas Early should and would pay and provide for the payment of said checks by the said Exchange Bank of Earlham or M. D. Hill; that the said checks should be drawn in the name of said C. E. Sisson as a matter of convenience to said Thomas Early, and that they should be in fact his own checks, and paid by him as such, and that all such checks so drawn would be paid by the defendant M. D. Hill and the Exchange Bank of Earlham out of funds in said bank belong·ing to the said Thomas Early, and that when so paid they should be charged to the account of said Thomas Early with said Bank; that the said C. E. Sisson should have no interest in the purchase of said stock and in the drawing of said check, except as the agent of said Thomas Early." By an amendment it is further alleged as follows: "That by said verbal agreement it·was agreed between the said Thomas Early and·the said C. E. Sisson that the said Thomas Early should and would carry on said business in the name of C. E. Sisson; that in said name, C. E. Sisson, all purchases·of said stock should be made, and all checks in payments for stock should be drawn; that said business of the said Thomas Early should be carried on in the name of C. E. Sisson for the con-venience of the said Thomas Early and to enable the said Thomas Early to separate the part of his business which he should so carry on through the instrumentality of

said C. E. Sisson from other stock purchasing which the said Thomas Early was then and there carrying on, and for the purpose of concealing from the persons with whom the said Thomas Early dealt in carrying on said business through the instrumentality of said C. E. Sisson the fact that said business was the business of him, the said Thomas Early." Judgment is asked in this count against Thomas Early for one hundred and two dollars and forty-eight cents, with interest. In the second count plaintiff, in addition to the matters stated in the first, alleges, in substance, as follows: That prior to November 19, 1892, plaintiff had general knowledge as to the manner in which checks were drawn in said business by Sisson, and that said checks had been, and were customarily, paid by the Bank of Earlham. That prior to said date plaintiff had paid checks of said Sisson, drawn in said manner, after inquiring as to each of M. D. Hill by telephone. That on said nineteenth day of November, 1892, certain checks so drawn by Sisson being presented to be cashed, plaintiff made inquiry of M. D. Hill, by telephone, through the agent of the telephone company at Adel, "whether any and all checks thereafter drawn by the said C. E. Sisson in said business of purchasing stock would be paid, and at the same time in said manner informed said M. D. Hill that said information was desired to avoid the necessity of calling him up by telephone thereafter when each such check given in said business should be presented." That in response thereto, M. D. Hill authorized said telephone agent to deliver the following in writing to the plaintiff: "It will be all O. K. to cash checks from C. E. Sisson to the amount of stock he gets. [Signed] M. D. Hill." He alleges that, relying thereon, plaintiff paid all checks made in said manner presented to it without further inquiry, upon Sisson's statement that they were given for stock, and that all of said checks were promptly paid by M. D. Hill, as cashier, up to the date of the check to J. C. Hill. In conclusion of this count plaintiff asks judgment against J. C. Hill, M. D. Hill, Exchange Bank of Earl-

ham, and Thomas Early for one hundred and two dollars and forty-eight cents. Thomas Early answered, admitting what we have stated as to undisputed facts, and denying every other allegation in the petition and amendment. M. D. Hill answered, admitting that said banks were banking institutions, and that he was proprietor of the Exchange Bank of Earlham; also admitting that Sisson gave J. C. Hill the check set out, that Hill sold and indorsed it to the Adel Bank, and that the Bank of Earlham refused to pay the same, and that it was protested. He denies all other allegations in the first count. As to the second count he admits that he stated by telephone to the agent at Adel, on November 19, 1892, as set out in the petition, but alleges that it was in response to an inquiry asking him about certain checks named in the inquiry, and that said answer related to no other checks. He denies all other allegations in said second count. In an amendment filed to conform to the evidence, M. D. Hill and the Exchange Bank of Earlham say that the undertaking or promise sued on in the second count was not in writing signed by these defendants, or by their authority, and that they had no money of Sisson, when said check was made or presented. J. C. Hill answered, admitting the allegations of the petition, and alleging that, as between him and his co-defendants other than Sisson, he is liable only as surety; that by the indorsement of the check he intended to assign and transfer all causes of action in his favor growing out of the transaction to the plaintiff, "and consents that plaintiff may have judgment against his co-defendants therefor." He asks that he be held liable as surety only. By way of cross petition against his co-defendants other than Sisson, he repeats the allegations of the petition, alleges knowledge of the insolvency of Sisson, and the solvency of the other defendants, and that he sold the stock and took the check in the belief that the defendants, or some other responsible party, were responsible for the payment of the check. He asks that, in case the plaintiff is not entitled to judgment, he have judgment against his co-defendants for the value of the stock

sold and delivered. Judgment was rendered against J. C. Hill in favor of the plaintiff in a former trial as to him, and on the further trial the case was submitted on the issues joined between the plaintiff and Thomas Early, the Exchange Bank of Earlham, or M. D. Hill; and these are the only parties appearing to this appeal.

II. This case is presented with unusual elaboration on the part of the appellants. The questions discussed were raised in various ways during the progress of the trial, and each exception is separately urged. We will not follow the order of appellant's argument, but consider each contention upon all the exceptions by which it is raised. Section 2644 of subdivision 2 of the Code of 1873 required that the petition must contain "the names of the parties to the action, plaintiffs and defendants, followed by the word 'Petition.'" This petition is entitled "S. M. Leach, Cashier," as plaintiff. Section 2543 of said Code provided that "every action must be prosecuted in the name of the real party in interest, except as provided in the next section." The petition shows, and so does the proof, that this check was purchased by S. M. Leach, as cashier of the Adel Bank, with its funds, for that bank, and that whatever may be due on these causes of action is due to that bank. After the close of the evidence in chief, appellants moved for a verdict, "because the testimony shows without dispute that at the time the suit was brought, and now, the check upon which it is founded was owned by a corporation known as the Adel Bank, and, therefore, this plaintiff has no right, title, or interest in the alleged cause of action." Section 2544, Code 1873, provides that "an executor or administrator, a guardian, a trustee of an express trust, a party with whom, or in whose name, a contract is made for the benefit of another, or party expressly authorized by statute, may sue in his own name without joining with him the party for whose benefit the suit is prosecuted." In this, as in most of their contentions, appellants assume that the causes of action are based upon

the checks alone; and the authorities cited are only applicable
to such a case. As we view the petition, neither count asks to
recover upon the check alone, but upon the alleged agreements,
to which the check is but an incident. In the first count
plaintiff seeks to charge Early upon the alleged agreement
between him and Sisson, and in the second to charge the
appellants on that agreement and the further agreement,
alleged to have been made between Leach and Hill, cashiers,
by telephone. Without these alleged agreements there would
be no cause of action shown against either Early, M. D. Hill,
or the Bank of Earlham. It is by virtue of the contract with
J. C. Hill and with M. D. Hill that plaintiff is entitled to
recover, if at all; and, as these were made with S. M.
Leach, cashier, he may maintain an action thereon without
joining the bank. In *Rice v. Savery,* 22 Iowa, 477, wherein
sections 2757 and 2758 of the Revision, which were identical
with said sections 2543 and 2544, were under consideration,
it is said: "It is no longer absolutely necessary (sections
2757, 2758), that the party to whom a promise is made shall
be the plaintiff on the record, in an action to enforce it. That
is to say, if the promise is made for the benefit of another,
who is the real party in interest, the latter may sue, though
the contract or promise be made to an agent or trustee; or, in
the case last supposed, the agent, or trustee, or person in
whose name a contract is made for the benefit of another, may
sue without joining the party for whose benefit the suit is
prosecuted. This is well settled by the previous adjudica-
tions of this court. *Conyngham v. Smith,* 16 Iowa, 471;
*Cottle v. Cole,* 20 Iowa, 482; *Taylor v. Adair,* 22 Iowa, 279."
It cannot be questioned that payment to Leach, cashier, of
whatever liability appellants may be under to the Adel Bank,
would have been a full satisfaction as to that bank. His
authority as cashier is undisputed, and therefore he held this
claim as trustee of an express trust for the bank, and under
said section 2544 may sue in his own name. We conclude
that under the exceptions made in said section 2544 S. M.

Leach is entitled to prosecute this action in his representative capacity as cashier without joining the Adel Bank.

III. Appellants, again assuming that this action is upon the check alone, insist that the only right of action which passed to the plaintiff is that which arises upon the check, and that only those who appear thereby as parties thereto are chargeable thereunder, and therefore appellants, not appearing as parties to the check, are not liable in this action. *Watson v. Cheshire,* 18 Iowa, 209; *Ridgeway v. Raymond,* 82 Iowa, 592; and *First Nat. Bank of Canton v. Railway Co.,* 52 Iowa, 378, are cited. In the first case Cheshire, payee, indorsed the note of Moore "without recourse" to Griffith, who indorsed it "without recourse" to Watson. Held, that Watson could not sue Cheshire on the indorsement. It is said: "Under our statute it may be that Griffith might specially assign his cause of action against Cheshire to the plaintiff, but the mere indorsement of the note without recourse would not have this effect. Such an indorsement operates simply to transfer the title to the note, not an independent cause of action." The indorsement of this check is not without recourse. J. C. Hill is subject to recourse, and may well have intended, as he says he did, to transfer to plaintiff all his rights of action growing out of the sale of the stock. In *Ridgeway v. Raymond* a partnership had executed its note to a bank, and after a dissolution of the partnership one of the partners executed a renewal note in the name of the late firm, the bank having no knowledge of the dissolution, and not intending to release either partner. The bank transferred the second note to the plaintiff, who sought to recover on the first note. It was held that he could not treat the note assigned to him as a nullity and sue on the first, in the absence of a showing that the bank was without knowledge of the dissolution of the partnership. It is said: "There is no averment in the petition from which we may infer that the bank ever regarded the note as invalid, and, if it regarded it as valid, knowing the facts, its treatment of the

note is conclusive upon its assignee, the plaintiff." In *First National Bank of Canton v. Railway Co.,* 52 Iowa, 378, it was held that a bill of exchange drawn upon a general fund, and not accepted, did not operate as an assignment of the fund, but was evidence to be considered in determining the intention of the parties, and that the evidence was not sufficient to show that the draft was intended as an assignment of a fund subsequently coming into the hands of the drawee. The case recognizes that there may be evidence other than the draft to show what was intended to be assigned. It is a well-established rule of law that where a contract is made for the benefit of a person not a party thereto such third party may bring action thereon. *Johnson v. Collins,* 14 Iowa, 64; *Knott v. Railway Co.,* 84 Iowa, 463; *Thomas v. Schee,* 80 Iowa, 237; *Becker v. Keokuk Water Works,* 79 Iowa, 419; *First M. E. Church v. Sweny,* 85 Iowa, 628. The alleged contract between Early and Sisson, if made, was manifestly for the benefit of those who might take Sisson's checks for stock purchased by him under that contract. The jury was warranted in finding that said contract was made, and it follows, under the rule first stated, that J. C. Hill had a right to charge Early under the contract with the price of the stock sold to Sisson. Now, it may be conceded that, if nothing further appeared than the check, and the action was thereon alone, appellants would not be liable, as they are not shown by the instrument to be parties to it. This action as to Early is not upon the check alone, but upon the contract under which he is liable, and which inured to the benefit of J. C. Hill. If nothing more appeared than the check and the indorsement thereof, it might be said that Early is not liable; but he is confronted by his contract with Sisson. This court has many times held that an assignment of a debt carries with it the security. It has been so held where promissory notes secured by mortgage were transferred, and we see no reason why the rule should not apply to the transfer of checks. Early's liability is in the nature of a security, and under this

rule passed with the transfer of the check. J. C. Hill could transfer his right of action against Early by parol, and it is manifest that both he and Leach intended and understood that all rights which Hill had growing out of the transaction were to pass to the plaintiff. By his agreement Early promised acceptance and payment of the checks of Sisson given for stock purchased, and this obligation passed by the transfer of the check, and plaintiff is entitled to maintain an action thereon. See *Fairlee v. Herring,* 3 Bing, 625 ; *Spaulding v. Andrews,* 48 Pa. St. 411; *Barker v. Guilliam,* 5 Iowa, 511. Appellants, still assuming that this action is upon the check alone, contend that evidence of the alleged agreement is inadmissible. If the action was upon the check alone, the authorities cited would be in point ; but, being upon the contract as well, plaintiff has the right to prove it.

IV. The jury was warranted in finding that the answer of M. D. Hill by telephone to the inquiry of S. M. Leach related to future checks given by Sisson "to the amount of stock he gets." Appellants contend that such acceptances must be on the instrument, or upon a separate paper after the instrument is drawn, or "by writing stating that a party may, in the future, draw a draft, and that the acceptor will honor it when presented." Counsel discuss the question whether the answer of M. D. Hill was in writing, the same having been taken down in writing by the telephone agent at Adel, and the writing delivered to the plaintiff. In the view we take of the case, it is not necessary to determine this question. In *Walton v. Mandeville,* 56 Iowa, 597, after a full review of the subject on a re-hearing, it was held that a verbal acceptance of an order is valid and enforceable only where the drawee has funds of the drawer in his hands, so that by payment of the order he satisfies his own debt. Now, it is true that M. D. Hill did not have any money of Sisson's in his hands, nor was it intended that he should ; but he did have money of Early's. He was fully informed

as to the contract between Early and Sisson, and consented to pay and had paid the checks drawn by Sisson upon the creditor out of the funds of Early. When he gave that answer he knew that Sisson was acting for Early, and that the checks would be in effect the checks of Early. Under these circumstances we think it must be said that the acceptance is valid, even if it was verbal. A promise to accept future drafts is only binding for a reasonable time, but, in view of the nature of the business, this check was drawn within a reasonable time after the promise. There can be no doubt but that plaintiff paid the one hundred dollars for this claim of J. C. Hill relying upon the promise and assurance of M. D. Hill that Sisson's check would be honored. M. D. Hill did so because he had the credit and funds of Early to back him, and he should not now be excused from liability because Sisson had no funds in the Bank of Earlham.

V. Appellants discuss at length some thirty-five assignments of error based upon rulings on evidence and instructions. We have examined these assignments with care, and find that they are largely based upon the contentions already considered, and, for the reasons stated, are not well taken. The other rulings complained of, where at all questionable, were without prejudice to the appellants. Our conclusion upon the whole record is that the judgment of the district court should be AFFIRMED.